**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**JENNIFER HILL,**

    **Plaintiff,**

vs.                                                                          **Case No.: 8:14-CV-398-T-30EAJ**

**CAROLYN COLVIN,
Acting Commissioner of Social
Security Administration,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI").

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the undersigned recommends that the Commissioner's decision be affirmed and this case be dismissed.[1]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler,

---

[1] The District Judge referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rule 6.01(a), M.D. Fla.

703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I. Background**

On December 27, 2010, Plaintiff filed an application for SSI, alleging disability beginning March 6, 2008.[2] (T14, 139) Plaintiff's application was denied initially and upon reconsideration, and an administrative hearing was held via videoconference on July 30, 2012. (T 14, 38, 91, 93) Thirty-eight years old[3] at the time of the hearing, Plaintiff has more than a high school education and past relevant work experience as a store manager and a sales engineer. (T 28)

On October 12, 2012, an ALJ denied Plaintiff's application. (T 29) Although Plaintiff's severe impairments included fibromyalgia, degenerative disc disease, cervical and lumbar spondylosis, seizures, insomnia, adjustment disorder, depression, posttraumatic stress disorder, and

---

[2] A claimant cannot receive SSI benefits for any period prior to the month in which the application was filed. See 20 C.F.R. §§ 416.330, 416.335. Accordingly, the appropriate period for determining whether Plaintiff was disabled is December 2010 through the date of the ALJ's decision, October 12, 2012.

[3] At the hearing, Plaintiff stated that she was thirty-seven years old, but the hearing took place one week before her thirty-ninth birthday. (T 41)

anxiety, these impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. (T16-17) Despite these impairments, Plaintiff was determined to have a residual functional capacity ("RFC") for sedentary work with the following limitations: frequent push or pull with both arms and both feet; frequent foot control operation with both feet; never climb ramps or stairs; never climb ladders, ropes, scaffolds; occasional stoop, crouch, kneel, and crawl; never balance, occasional reaching and overhead reaching with both arms; frequent handling objects, that is gross manipulation with both hands; frequent fingering, that is fine manipulation of items no smaller than the size of a paper clip with both hands; limited to jobs that can be performed while using a hand-held assistive device while walking and standing; no exposure to dangerous machinery and unprotected heights; able to remember and carry out one- to two-step instructions; able to perform simple, routine, repetitive tasks; able to work in a low stress job, defined as having only occasional changes in the work setting and in an environment free of fast-paced production requirements; and only occasional superficial interaction with the public, co-workers, and supervisors. (T 18-19)

The ALJ found that Plaintiff was unable to perform her past relevant work as a store manager or sales engineer. (T 28) However, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff was capable of performing jobs available in significant numbers in the national economy, such as addresser, polisher, and document preparer. (T 28-29) Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period. (T 29) On December 19, 2013, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 1-3)

The medical and other evidence has been reviewed in the ALJ's decision and will not be

repeated here except as necessary to address the issues presented.

## II. Analysis

On appeal, Plaintiff contends that the ALJ erred by discounting the opinions of two of Plaintiff's treating physicians, Michelle Spuza-Milord ("Dr. Spuza-Milord") and Ricky Lockett, D.O. ("Dr. Lockett").

When reviewing Plaintiff's record, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefor. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam) (citation omitted). Specifically, whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178-79 (11th Cir. 2011).

Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject the opinion. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982) (citation omitted). "Good cause" exists when (1) the treating physician's opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the treating physician's opinion is conclusory or inconsistent with the doctor's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted). Rejection of a treating physician's opinion must be supported by clearly articulated reasons. Id. at 1241.

**A.**     Dr. Spuza-Milord

Plaintiff was first seen by Dr. Spuza-Milord, a rheumatologist, for a comprehensive

rheumatology consultation on August 25, 2010. (T 365-66) The examination confirmed neuralgias, cephalgias, and fibromyalgia rheumatica as Plaintiff had reproducible tender points as well as hyperactivity and reaction to pressure on atypical regions. The examination also found that Plaintiff had hyperflexia on deep tendon testing on all four extremities and had no neurologic findings of all cranial nerves. (T 366) Plaintiff was seen three more times by Dr. Spuza-Milord, in November 2010, September 2011, and December 2011. (T 498-514) Plaintiff was assessed with irritable bowel syndrome, eczema, arthralgias in multiple sites, cervical spondylosis, lumbar spondylosis, fibromyalgia syndrome, and hypochromic/microcytic anemia. (T 503, 510) Her exams were positive for knee effusions, swollen ankles, peeling rash palms, restricted digits, and soft tissue that hurt to touch. (Id.) Plaintiff was prescribed carafate and cyclobenzaprine. (T 503) The ALJ summarized the September 27, 2011 examination, noting that Plaintiff reported overall body pain with no weakness; Plaintiff's finger joints did not have a full range of motion and that Heberdens nodes were seen; Plaintiff's first carpometacarpal joint was swelling and there was localized thickening of the palmar fascia; Plaintiff had some limitation in the range of motion of her elbows and shoulders; Plaintiff had eighteen positive trigger points; Plaintiff's cervical spine exhibited increased lordosis, tenderness on palpation, and pain upon motion, but no instability; Plaintiff's thoracolumbar spine exhibited abnormal kyphosis and her lumbosacral spine exhibited tenderness on palpation, muscle spasms, pain on motion, and abnormal motion; Plaintiff's sciatic notch exhibited tenderness on palpation but the straight leg raising tests were negative; and Plaintiff's hips, knees, ankles, and feet showed limitations in range of motion but her cranial nerves, motor strength, and gait and stance were normal. (T 20-21, 505-11)

On January 23, 2012, Dr. Spuza-Milord completed a Fibromyalgia Residual Functional

Capacity Questionnaire. (T 568-74) She opined that Plaintiff's pain and other symptoms would frequently interfere with her attention and concentration needed to perform even simple work tasks and that Plaintiff was incapable of even "low stress" jobs. (T 570) Plaintiff was unable to walk any city blocks without rest or severe pain; she could sit for twenty to thirty minutes before needing to get up; she could stand for five to fifteen minutes before needing to sit down or walk around; she can sit for less than two hours in an eight-hour workday; and she can stand or walk for less than two hours in an eight-hour workday but she cannot stand or walk for more than fifteen to twenty minutes without rest. (T 571) Additionally, Plaintiff would need to walk every twenty to forty-five minutes for three to eight minutes. (Id.) Plaintiff would need a job permitting shifting positions at will, but she did not need a can or other assistive device. (T 572) Plaintiff would need to take between two and five unscheduled breaks a day, with the breaks lasting from ten minutes to all day if Plaintiff was flaring, and she would need to lie down or sit quietly during such unscheduled breaks. Plaintiff could rarely lift and carry less than ten pounds and could never lift or carry more than ten pounds. (Id.)

      Further, Dr. Spuza-Milord opined that Plaintiff could rarely twist, stoop, and climb stairs, and she could never crouch or climb ladders. She could never look down with sustained flexion of the neck, look up, or hold her head in a static position, and she could rarely turn her head left and right. (T 573) In an eight-hour workday, Plaintiff could grasp, turn, and twist objects with her hands twenty-five percent of the time, perform fine manipulations with her fingers forty percent of the time, and reach, including overhead, with her arms twenty-five percent of the time. (Id.) Finally, Dr. Spuza-Milord opined that Plaintiff's impairments produce good and bad days and that Plaintiff's impairments would likely result in her absence more than four days per month. (T 574)

The ALJ afforded little weight to Dr. Spuza-Milord's opinion, noting contradictions in the record as to whether Plaintiff required an assistive device,[4] that Plaintiff stated her medications were very effective and made her pain moderate and manageable, that Plaintiff had received only conservative treatment, and that no physician recommended more invasive treatment. (T 26) Additionally, the ALJ stated:

> Although Dr. Spuza-Milord's notes showed positive findings, the claimant's conservative treatment and the general lack of complaints about back pain show that the treatment notes simply do not support the restrictiveness of this opinion. In fact, in September 2011 she noted that the claimant's cranial nerves, motor strength, and gait and stance were normal. Thus, for these reasons and those stated above, this opinion is overly restrictive. Also, as the cited evidence showed, the treating physicians' opinions were not bolstered by the evidence, the evidence supported contrary findings, and the opinion was inconsistent with the doctor's own medical records.

(T 27) (internal citations omitted)

**B.**     Dr. Lockett

Plaintiff began seeing Dr. Lockett for pain management on March 11, 2008. (T 355) Following Plaintiff's alleged onset date, Plaintiff was seen monthly from 2011 through May 2012. (T 386, 473-80, 490-96, 596-600)  The treatment records from Dr. Lockett include diagnoses of cervicalgia, lumbago, fibromyalgia, cervical sprain, displacement of the cervical intravertebral disk, rotator cuff tear, adhesive capsulitits of the right shoulder, and inflammation of the right illiotibial band. Dr. Lockett provided treatment through medication, including Dilaudid, Lyrica, Valium, methadone, Lasix, and Roxicodone.  Physical examinations of Plaintiff consistently revealed tenderness and muscle guarding of the cervical paraspinal musculature bilaterally, tenderness and

---

[4] In any event, the ALJ limited Plaintiff's RFC as permitting use of a hand-held assistive device while walking and standing. (T 18-19, 23)

muscle guarding of the thoracic and lumbar paraspinal musculature with point tenderness over the sacroiliac joint. (T 480, 598) From January 2011 to April 2011, examinations revealed tenderness and muscle guarding of the upper trapezius muscles bilaterally. (T 386, 477) A May 16, 2012 exam also found exquisite tenderness along the right iliotibial band. (T 596)

On May 22, 2012, Dr. Lockett completed a Physical Residual Functional Capacity Questionnaire.[5] (T 581-84) Dr. Lockett opined that Plaintiff would constantly experience pain or other symptoms that would interfere with the attention and concentration needed to perform even simple work tasks and that she was incapable of tolerating "low stress" jobs. (T 581) Plaintiff could walk three city blocks without rest or severe pain, she could sit for two hours before needing to get up, and she could stand for thirty minutes before needing to sit down or walk around. (Id.) In an eight-hour workday, Plaintiff could stand and walk for less than two hours and she could sit for about four hours. (T 582) Plaintiff must walk for seven minutes every sixty minutes. She would need a job that permits shifting positions at will, and she would need to take one to two unscheduled breaks of about ten minutes during an eight-hour workday. (Id.) Plaintiff did not need a cane or other assistive device. Plaintiff could frequently lift less than ten pounds, occasionally lift ten pounds, and never lift more than twenty pounds. (Id) She could occasionally look down with sustained flexion of the neck, turn her head right or left, look up, and hold her head in a static

---

[5] As Plaintiff notes in her memorandum (Dkt. 16 at 23), the first page of Dr. Lockett's questionnaire is not included in the record. To the extent Plaintiff suggests that the ALJ failed to develop the record, this argument is without merit. While the ALJ has a basic obligation to develop a full and fair record, Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) there must be a showing of prejudice before a case is remanded to the Commissioner. Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995) (per curiam). Plaintiff, who was represented by counsel and who did not object to the record at the hearing, does not explain how the absence of the first page of Dr. Lockett's questionnaire precluded the ALJ from making an informed decision.

position. (T 583) She could occasionally twist, rarely stoop, crouch or squat, and climb stairs, and never climb ladders. (Id.) In an eight-hour workday, Plaintiff could grasp, turn, and twist objects with her hands twenty-five percent of the time, manipulate with her fingers twenty-four percent of the time, and reach, including overhead, with her arms one percent of the time. (Id.) Finally, Dr. Lockett opined that Plaintiff's impairments produce good and bad days and that Plaintiff's impairments would likely result in her absence more than four days per month. (Id.)

The ALJ also afforded little weight to Dr. Lockett's opinion, stating that the conservative treatment, major contradictions in findings, and Plaintiff's own admission of symptom relief showed that the opinion was overly restrictive. (T 26)

While Plaintiff argues that the ALJ's rejection of Dr. Spuza-Milord and Dr. Lockett's opinions was not supported by substantial evidence, the ALJ articulated adequate reasons for rejecting the opinions. The ALJ properly gave special consideration to Plaintiff's fibromyalgia in considering the opinion evidence of her treating physicians.[6] (T 17, 26-27) The ALJ was required to evaluate the evidence and assign the weight to be afforded to each opinion, and the Court cannot reweigh the evidence. Here, the ALJ articulated specific reasons for giving the opinions of Dr. Spuza-Milord and Dr. Lockett little weight, including contradictions in the record, the effectiveness

---

[6] The Eleventh Circuit has observed:
[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. Thus, a treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective signs of severity and the physician must interpret the data for the reader.

Stewart v. Apfel, No. 99-6132, 2000 U.S. App. LEXIS 33214, at *8-9 (11th Cir. Dec. 20, 2000) (per curiam) (unpublished) (citation and internal quotations omitted); see also Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

of medications in making Plaintiff's pain moderate and manageable, conservative treatment, and inconsistency with the doctors' own medical records. These reasons are supported by substantial evidence. Compare Borden v. Astrue, 494 F. Supp. 2d 1278, 1283 (N.D. Ala. 2007) (remanding because the ALJ's statement that treating physician's opinion warranted little weight because "his opinion is inconsistent with his own objective clinical findings" was conclusory and the only reason articulated for rejecting the opinion), with Peters v. Astrue, 232 F. App'x 866, 872 (11th Cir. 2007) (per curiam) (unpublished) (the ALJ's provided "specific, cogent, and credible" reasons for discounting treating physicians' opinions where their evaluations were inconsistent with treatment records, their opinions regarding the severeness of claimant's fibromyalgia differed, and there were inconsistencies between claimant's of disability and her testimony regarding her ability to perform various tasks around her home),[7] and Labounty v. Astrue, No. 8:11-CV-1718-T-TGW, 2012 WL 5928418, at *3 (M.D. Fla. Nov. 26, 2012) (the ALJ's explanation that treating physician's findings on the many physical examinations performed simply contradict the extreme functional limitations in a Fibromyalgia RFC Questionnaire is "adequate and provides good cause" for affording little weight to the opinion). Accordingly, the ALJ did not err in her decision to afford these opinions little weight, and there is no reversible error. Moore, 405 F.3d at 1212.

## Conclusion

The ALJ's decision is supported by substantial evidence and the proper legal principles. The

---

[7] Although Plaintiff does not challenge the ALJ's credibility evaluation, the ALJ also found that Plaintiff's activities of daily living were consistent with the RFC. Although Plaintiff reported spending most of the day in bed due to pain and that "she cannot even do her own laundry due to lifting limitations and that her parents do the cooking, cleaning, shopping[,] and laundry[,] . . . Dr. Lockett noted that [Plaintiff] does more activities than admitted. He noted she reported the she has [] a severe exacerbation of pain if she tries to do more than three loads of laundry or if she sits too long in front of the computer, but yet does these activities." (T 25, 473)

decision of the Commissioner should therefore be affirmed.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) The decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with each party to bear its own costs and expenses; and

(2) The Clerk of Court enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**Date: February 5, 2015**

_____
ELIZABETH A JENKINS
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:

Counsel of Record

District Judge